UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL R. CASHMAN,

        Plaintiff,

  v.                                                  Case No. 15-C-808

BAYLAND BUILDINGS, INC.,
STEVE AMBROSIUS,
ABRAHAM FARLEY,

        Defendants,

ACUITY, A MUTUAL INSURANCE COMPANY,

        Intervenor Defendant.

---

**DECISION AND ORDER GRANTING ACUITY'S
MOTION FOR SUMMARY JUDGMENT**

---

    This matter is before the Court on the motion of Intervenor Defendant Acuity, A Mutual Insurance Company ("Acuity"), for summary judgment declaring that Acuity has no duty to defend or indemnify its insureds, Defendants Bayland Buildings, Inc., Steven Ambrosius and Abraham Farley, on the claims asserted against them by Plaintiff and former Bayland employee Michael Cashman. The Court has jurisdiction over the ERISA claims asserted in Cashman's complaint under 28 U.S.C. § 1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims, including Acuity's claim for declaratory relief. For the reasons below, Acuity's motion will be granted.

## BACKGROUND

Plaintiff Michael R. Cashman filed this suit alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA) and numerous state law claims against Bayland Buildings, Inc., Steve Ambrosius, and Abraham Farley. Bayland, which is engaged in the business of designing and building commercial buildings, is Plaintiff's former employer. Ambrosius and Farley are alleged to be fiduciaries of Bayland's Employee Stock Ownership Plan (the Plan).

Bayland and the individual defendants tendered the defense of the action to Acuity, their liability insurer. Acuity elected to defend under a reservation of rights until a coverage determination was made by the Court and intervened in the action. Acuity now seeks such a coverage determination, arguing there is no initial grant of coverage under the EBL policy endorsement discussed below and that certain exclusions preclude coverage even if there is an initial grant of coverage.

The complaint alleges that Cashman and Bayland entered into an employment agreement in 2013 under which Bayland was obligated to pay him a base salary, plus a commission on the net profit of all commercial sales and agricultural projects, and benefits, including retirement and health benefits and inclusion in the Plan. The complaint further alleges that Farley and Ambrosius breached their duties as fiduciaries of the Plan by diverting Bayland profits for their personal use. Farley is alleged to have built a garage at his personal residence and billed almost $9,000 in costs plus concrete to an existing job for a client of Bayland. Ambrosius is alleged to have used Bayland funds to make a personal loan of more than $75,000 to an individual who is repaying the loan directly to Ambrosius. These and other transactions, according to the complaint, decreased Bayland's profits and thereby negatively affected the Plan and its participants, including Cashman.

The complaint also alleges that Cashman's employment was terminated by Bayland on March 26, 2015, and that Bayland has failed to pay him more than $100,000 in commissions owed him under his employment agreement with Bayland.

The complaint asserts eleven "claims for relief" based on these allegations. In essence, however, the complaint alleges breach of fiduciary duties under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), by Farley and Ambrosius; non-payment of wages in violation of Wisconsin law; breach of contract; and breach of the duty of good faith and fair dealing, each arising out of the failure to pay commissions. *See* Compl. Counts 1–3 (ERISA), Count 4 (non-payment of wages under Wis. Stat. §§ 109.03 and 109.11), Counts 5–10 (breach of contract and alternative quasi-contractual claims), and Count 11 (breach of duty of good faith).

The only potentially applicable coverage provision of the insurance policy at issue is included in an "Employee Benefits Liability Coverage Part" (the EBL endorsement). The EBL endorsement states in relevant part:

> We will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages sustained by an employee, former employee, prospective employee or their beneficiaries or legal representatives. The damages must be caused by <u>any negligent act, error or omission</u> of the *insured*, or any other person for whose acts the *insured* is legally liable, <u>in the *administration*</u> of the *insured's employee benefit programs*. . . .

Ex. A to Aff. of Daniel J. Hurst, ECF No. 20-1 at 82 (underlining added). "Administration" is defined in the policy to mean: "a. <u>Giving counsel</u> to employees with respect to the *employee benefit programs*; b. <u>Interpreting</u> the *employee benefit programs*; c. <u>Handling of employee records</u> in connection with the *employee benefit programs*; and d. <u>Effecting enrollment, termination or cancellation</u> of employees under the *employee benefit programs*; provided all such acts are

3

authorized by the *named insured*." *Id.* at 85 (underlines added). An "employee benefit program" means "group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans or any other similar *employee benefit programs*." *Id.*

The policy also contains two relevant exclusions. The first excludes coverage for "[a]ny dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation." The second excludes coverage for "[t]he *insured's* failure to comply with any law, regulation or executive order," including without limitation claims based on the violation of a fiduciary duty imposed under ERISA, but not including, by virtue of an exception to the exclusion, such claims based on "the administration" of an employee benefit program. *Id.* at 82.

Based on the allegations in the complaint and the policy, Acuity requests summary judgment declaring it has no duty to defend or indemnify its insureds because (1) the insuring agreement does not provide coverage for the insureds' conduct alleged in the complaint and (2) any coverage it arguably provides is removed by each exclusion above. The defendants/insureds oppose the motion, offering several arguments addressed below.

**ANALYSIS**

**A.    Summary Judgment Standard**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley*

4

*v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.,* 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**B.     Coverage Questions Are Properly Before The Court And Ripe For Decision.**

Defendants raise several threshold issues to Acuity's motion. They first argue that Acuity's motion seeks a ruling from the Court that it has no duty to indemnify them, but makes no mention of the broader duty to defend them under the terms of the policy. Because Acuity did not specifically mention the duty to defend in its motion, Defendants argue that Acuity is entitled to no relief as to that issue.

Generally, policies of liability insurance impose two duties on the insurer with respect to its insured: the duty to defend and the duty to indemnify. *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984). The duty to defend is broader than the duty to indemnify the insured and is determined by comparing the allegations within the four corners of the complaint to the terms of the insurance policy. *Smith v. Katz*, 226 Wis. 2d 798, 806, 595 N.W.2d 345, 350 (1999). If the complaint includes allegations that, if proven, would result in a judgment the insurer would be required to pay, the insurer has a duty to defend. *School District of Shorewood v. Wausau Insurance Companies*, 170 Wis. 2d 347, 364, 488 N.W.2d 82, 87 (1992). "The duty to defend

5

focuses on the nature of the claim and has nothing to do with the merits of the claim." *Smith*, 226 Wis. 2d at 806. When evaluating whether a duty to defend exists, a court should construe the allegations of a complaint liberally and "must assume all reasonable inferences in the allegations of the complaint." *Fireman's Fund Insurance, Co. v. Bradley Corporation*, 2003 WI 33, ¶ 20, 261 Wis. 2d 4, 660 N.W.2d 666 (internal citations omitted).

For the duty to indemnify to arise, on the other hand, two conditions must be met. The claim must fall within the terms of the insurance policy agreement, and the insurer must agree, or a court find, that the insured is liable on this claim. *Elliott v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992). Because the duty to defend is broader than the duty to indemnify, a conclusion that there is no duty to defend means that there is no duty to indemnify. And once the court resolves the question of indemnity in the insurer's favor, coverage is no longer open to debate and there is no longer a duty to defend. "An insurer need not defend a suit in which it has no economic interest." *J.G. v. Wangard*, 2008 WI 99, ¶ 23, 313 Wis. 2d 329, 753 N.W.2d 475.

It follows from the foregoing that Acuity's request for a determination that it has no duty to defend Defendants against Cashman's claims is implicit in its motion for a determination that it has no duty to indemnify them. This is because the duty to defend evaporates upon a determination that the insurer has no duty to indemnify its insured. *Id.* Moreover, even if Acuity's request for a determination that it has no duty to defend Defendants was not implicit in its motion for a determination that it has no duty to indemnify them, the result would be the same. Acuity's motion incorporates by reference its accompanying brief, which makes clear Acuity seeks summary judgment as to the duty to defend and its duty to indemnify. ECF Nos. 18 & 19. I therefore

conclude that Acuity's duty to both defend and indemnify Defendants has been properly raised in Acuity's motion.

Defendants next contend that Acuity's motion for summary judgment is procedurally flawed because it improperly cites only the allegations in the complaint as support and not facts. Defendants argue that summary judgment rules require the moving party to present a prima facie case and specifically burden Acuity to establish undisputed material facts substantiating coverage defenses. Defendants note that Fed. R. Civ. P. 56(c)(4) expressly requires affidavits be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Since Acuity's motion is not supported by admissible evidence, Defendants contend it should be denied outright.

Defendants' argument has a superficial appeal. What they fail to realize (or perhaps ignore), however, is that for coverage determinations the operative facts are those alleged in the complaint, along with the policy of insurance under which coverage is alleged to exist. As noted above, the duty to defend is "determined by comparing the allegations within the four corners of the complaint to the terms of the insurance policy." *Smith*, 226 Wis. 2d at 806. And because the duty to defend is broader than the duty to indemnify, the conclusion that there is no duty to defend necessarily means that there is no duty to indemnify. *N.B. v. Wausau School Dist. Bd. of Educ.*, 567 F. Supp. 2d 1055, 1058 (W.D. Wis. 2007). Thus, far from being improper, Acuity's reliance on the allegations of the complaint for a determination of coverage is in full conformity with Wisconsin law and the rules governing summary judgment.

Defendants' final threshold argument is that the question of whether Acuity has a duty to indemnify them for damages arising out of the underlying lawsuit is not ripe for determination

7

because their liability has not yet been determined. Defendants contend that Wisconsin law requires evidentiary facts established at trial or by motion supported by admissible evidence, not a survey of the allegations of the complaint, to determine an insurer's indemnification obligations. In support of their contention, Defendants cite *Olson v. Farrar*, 2012 WI 3, 338 Wis. 2d 215, 809 N.W.2d 1. But *Olson* and the case it relied on, *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845, merely <u>permit</u> consideration of extrinsic evidence to resolve coverage questions in certain circumstances. Neither case holds that an insurer <u>must</u> present extrinsic evidence to support its contention that there is no coverage when the allegations of the complaint do not give rise to coverage in the first place. *See Lucterhand v. Granite Microsystems, Inc.*, 564 F.3d 809, 812 n.2 (7th Cir. 2009) (noting exception to four corners rule typically applies where complaint states arguably covered claim but where dispute remains as to actual coverage).

Defendants also cite *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152 (7th Cir. 1995), for the proposition that "the issue of insurance indemnification is not ripe for adjudication until the [underlying] case ends." Br. in Opp. 3–4. In *Grinnell* an insurer filed suit against its insured seeking declaratory judgment of non-coverage for an automobile accident that claimed the lives of three people and left one person seriously injured. The insured, as well as the administrators for the estates of the deceased and guardian of the survivor, were named as interested parties in the suit. The district court granted the insurer's motion that the insurer had no duty to defend or indemnify. The estate administrators and guardian in the underlying tort litigation against the insured (collectively referred to as victims by the court) appealed the district court's decision, but the Seventh Circuit dismissed their appeal. The court of appeals held the victims were not entitled to contest the district court's declaratory judgment because the victims were helped rather than hurt

8

by the judgment that the insurer owed its insured no duty to defend against their claim. *Id.* at 1154. The court declined to address the issue of whether the insurer had a duty to indemnify because, in its view, Illinois law treats arguments about the duty to indemnify as unripe until the insured has been held liable. The court noted that although the insurer would not have to indemnify on allegations found insufficient to activate a duty to defend (like here), the victims' theory of recovery in the underlying suit could change, which would give rise to different issues as to whether there is any duty to indemnify. *Id.*

Notwithstanding *Grinnell*, which involved Illinois law and which arose in a different context (i.e. where the issue was whether the victims were even aggrieved by the declaratory judgment entered in favor of the insurer), I conclude that the issue of Acuity's duty to indemnify is properly before me in this suit. In accordance with Wisconsin law, Acuity moved for summary judgment on its claim for relief in the form of a declaration that it has no duty to defend or indemnify its insureds on any of the claims asserted in Cashman's complaint. If there is extrinsic evidence that creates a genuine dispute as to whether there was actual coverage under the policy, it was incumbent upon Defendants to produce such evidence in response to Acuity's motion. *See Siegel*, 612 F.3d at 937 ("Summary judgment is the 'put up or shut up' moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" (internal citations omitted)). Defendants offer no such evidence here. Instead, they speculate that it is possible facts will later surface that may support a covered claim. But that would be a different case. In the event Plaintiff's theory of recovery against Defendants changes and a new claim is asserted, Defendants may tender the defense of that claim

9

to Acuity. The mere possibility of a new and different claim being asserted, however, does not deprive Acuity of its right to a coverage determination based on the claims actually alleged. To hold otherwise would make coverage determinations impossible absent a full and complete trial. That is not the law in Wisconsin. I therefore proceed to the merits of Acuity's motion.

**C.     Coverage Does Not Exist Under Acuity's Policy For The Claims At Issue.**

As noted, in determining whether an insurance policy covers a claim against its insured the Court compares the allegations in the complaint to the terms of the policy, starting with the insuring agreement then proceeding to any exclusions and exceptions. If the allegations raise "the possibility" of coverage as to even one claim for relief, the insurer has a duty to defend. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 21, 660 N.W.2d 666. Construction of the terms of an insurance policy has three steps: "First, the court examines whether the policy's insuring agreement makes an initial grant of coverage. If the initial grant of coverage is triggered by the claim, the court examines the various exclusions to determine whether any exclusion precludes coverage. If so, the court then determines whether there is an exception to the exclusion which reinstates coverage." *Olson*, 338 Wis. 2d 215, ¶ 41 (internal citations omitted). Moreover, "[a]n insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy," *Folkman v. Quamme*, 264 Wis. 2d 617, ¶ 12, but "[b]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage." *Olson*, 338 Wis. 2d 215, ¶ 42.

Here, the complaint alleges that Farley and Ambrosius took actions in their own interests that reduced the profits of Bayland and thereby negatively affected the Plan. These acts are alleged to

10

be breaches of their fiduciary duties under ERISA. The complaint also alleges Bayland failed to pay Cashman commissions as required by the terms of his employment agreement. This is alleged to be a violation of Wisconsin statutory law governing payment of wages and the State's common law governing contract and the duties of good faith and fair dealing arising therefrom.

The insuring agreement provides coverage for damages caused by "any negligent act, error or omission of the insured . . . in the administration of the insured's employee benefit programs." There is no dispute that Farley and Ambrosius are "insureds" under the policy and that Bayland's Plan is an "employee benefit program" as defined in the policy. Acuity contends, however, that Farley and Ambrosius's alleged actions were not negligent acts, errors or omissions, and further, that those acts, errors, or omissions were not done "in the administration" of the Plan. I agree.

As to the ERISA claim, Farley and Ambrosius are alleged to have breached their fiduciary duties by acting <u>deliberately</u> in their own self-interest. Acts in violation of an insured's fiduciary duty are expressly excluded from coverage unless they are in "administration" of the employee benefit program. (ECF No. 20-1 at 85.) The breaches of fiduciary duty Ambrosius and Farley are alleged to have committed do not constitute the "administration" of the Plan under the plain language of the policy because "administration" is defined very narrowly to mean only four things—giving counsel to employees with respect to the employee benefit programs; interpreting the employee benefit programs; handling of employee records in connection with the employee benefit programs; and effecting enrollment, termination or cancellation of employees under the employee benefit programs; provided all such acts are authorized by the named insured—each of which is a non-discretionary, ministerial activity closely related to an actual employee benefit program. *See Maryland Cas. Co. v. Economy Bookbinding Corp. Pension Plan and Trust*, 621 F.

11

Supp. 410, 413 (D.N.J. 1985) ("It is clear that the policy limits coverage to liability incurred in relatively routine, ministerial acts performed in relation to the Pension Plan, and avoids coverage of liability incurred in the decision-making and monitoring involved in managing the Plan's investments."). The covered acts stand in stark contrast to the acts alleged in the complaint.

The same is true as to the state law claims. Neither negligent acts, nor acts "in the administration" of the Plan, are alleged. Instead, the state law claims are based on Defendants' failure to pay Cashman his wages and commissions when due and the termination of his employment. Wages and commissions constitute an employee's compensation, however, and do not fall within the policy's definition of "employee benefit program." Neither does Cashman's sales position. Were it otherwise, then Cashman's state law claims would be governed by ERISA, not state law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985). For this reason alone coverage is lacking. But even if wages and commissions were considered part of an employee benefit program, there is no suggestion that the nonpayment was due to any negligent act, error or omission on the part of Defendants' or for which they could be liable.

Defendants argue that the policy covers not only negligent acts, but also errors and omissions that are not due to negligence. In other words, they argue a negligent act is not required for coverage because the word "negligent" in the phrase "negligent act, error or omission" modifies "act" but not "error" or "omission." Br. in Opp. 7–8. Under Defendants' interpretation of the policy, the insurance they purchased provides coverage for unpaid wages and commissions due Cashman regardless of why they omitted paying him and whether the omission was negligent or not. In support of their argument, Defendants cite *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI

12

94, 293 Wis. 2d 410, 716 N.W.2d 822. But that case does not stand as authority for Defendants' contention that the phrase "damages caused by any negligent act, error or omission" means negligent act but non-negligent errors and omissions. Though the Wisconsin Supreme Court's opinion in that case recounts the parties' argument over the meaning of the phrase, the Court found it unnecessary to resolve their dispute and simply found the allegations in the complaint "sounded in negligence" and fell within the coverage of the professional liability policy there at issue. *Id.* at ¶¶ 54–57.

Defendants' reading of the phrase violates basic rules of grammar and logic. "Under generally accepted rules of syntax, an initial modifier 'will tend to govern all elements in the series unless it is repeated for each element.'" *Washington Educ. Ass'n v. National Right to Work Legal Defense Foundation, Inc.*, 187 Fed. Appx. 681, 682 (9th Cir. 2006) (quoting THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE chapter 2, ¶ 10 (Houghton Mifflin, 1996)). Other courts that have construed this language have concluded that the word "negligent" in general liability policies of insurance modifies not just the word "acts" but also "errors and omissions." *See, e.g.*, *United States Fid. & Guar. Co. v. Fireman's Fund Ins. Co.*, 896 F.2d 200, 203 (6th Cir. 1990) (holding that the reasonable construction of the phrase "negligent act, error, or omission" is that the policy covers only negligent and not intentional conduct). In *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London*, 761 F. Supp. 1485 (D. Kan. 1991), the court examined a directors and officers liability policy and concluded that coverage for any "negligent act, error, omission, misstatement or misleading statement" does not include intentional acts. *Id.* at 1489–90. The court reasoned that the term "negligent" must modify the words "act," "error," and "omission" because "[i]t would be self-defeating to limit the definition of [the phrase] to negligent acts, but at the same time cover intentional errors or omissions." *Id.* at 1490. The court reached the same conclusion in construing the same EBL endorsement at issue here in *New Hampshire Ins. Co. v. Westlake Hardware, Inc.*,

13

11 F. Supp. 2d 1298, 1301 (D. Kan. 1998). The Northern District of California likewise reached the same conclusion in an unpublished decision in *Group Voyagers, Inc. v. Employers Insurance of Wausau*, finding the alternative interpretation "illogical and inconsistent with ordinary rules of grammatical construction." No. 01-0400, 2002 WL 356653, ** 3, 4 (March 4, 2002). This Court agrees. To construe the phrase as Defendants urge would render the word "negligent" meaningless.

      Defendants alternatively argue that the complaint does allege the nonpayment was negligent, but the argument fails as a matter of law. The idea that an insured's failure to pay money due and owing under a contract could constitute negligence covered under a policy of insurance has been rejected by the Seventh Circuit in a case interpreting this same endorsement. In *Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Insurance Co.*, 987 F.2d 415 (7th Cir. 1993), the plaintiff, acting on advice of counsel, failed to make payments to an employee pension fund under the mistaken belief that they were not owed. After judgment was entered against the plaintiff for the unpaid pension contributions, he sought indemnification from his commercial general liability insurer under the EBL endorsement. The Seventh Circuit held that there was no coverage because the plaintiff's damages did not arise from a "negligent act, error, or omission." *Id.* at 419. The Court explained:

> Baylor's liability to the pension fund is contractual. Although at the time Baylor refused to make fund payments it did not believe it had any contractual obligation to do so, these beliefs do not change the contractual nature of the obligation. The Fund was awarded amounts owed pursuant to the collective bargaining agreement, not damages for negligence, and these payments are not covered by Baylor's policy.

*Id.* at 419–20. The court went on to note that there is a well-recognized line of demarcation between negligent acts and breaches of contract. "Baylor's failure to make payments to the Fund," the court noted, "was a breach of contract but its insurance policy covered only negligent acts." *Id.* at 420.

14

The same is true here as to Cashman's claims for unpaid wages and commissions. Defendants' liability for those amounts, if any, is contractual. Even if due to a mistake, nonpayment is not covered under Acuity's policy of insurance.

Accordingly and for the reasons set forth above, Acuity's motion for summary judgment is **GRANTED**. The Clerk of Court is directed to enter judgment declaring that Acuity has no duty to defend or indemnify Defendants against the allegations in Plaintiff's complaint. Further, finding no just reason for delay, the Court directs the Clerk to enter judgment forthwith pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Dated this  12th  day of May, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
