UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL R. CASHMAN,

    Plaintiff,

v.                                   Case No. 15-C-0808

BAYLAND BUILDINGS, INC.,
STEVE AMBROSIUS, and
ABRAHAM FARLEY,

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael R. Cashman filed a complaint alleging ERISA and state law claims against his former employer, Bayland Buildings, Inc.; Steve Ambrosius, Bayland's president; and Abraham Farley, its chief operating officer. Arising under federal law, the ERISA claims provide this Court with jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Defendants Bayland, Ambrosius, and Farley have filed a motion seeking summary judgment on all of Cashman's claims. For the reasons below, Defendants' motion will be granted with respect to Cashman's ERISA claims. With the federal claims gone, the Court will follow the general rule and decline to exercise jurisdiction over the state law claims, which will be dismissed without prejudice.

## BACKGROUND

Bayland, based in Hobart, Wisconsin, is a general contractor in commercial, agricultural, and industrial markets. Steve Ambrosius is the president of Bayland, and Abraham Farley is its chief

operating officer. Bayland is employee-owned through an employee stock ownership plan (the Plan). Employees participating in the Plan receive stock in Bayland pursuant to the Plan's terms and conditions. The Plan identifies Bayland as the plan administrator but indicates Bayland may authorize an individual to act as the administrator on its behalf. (ECF Nos. 38-1 & 49-2.) Bayland has done so, and the Plan is administered by a third-party entity, Principal Financial Group. (Def.'s Proposed Findings of Fact (DPFOF) ¶ 6, ECF No. 36.) The Plan provides that "the Company shall determine the amount of any contribution made to the Plan" and allocates any contribution among qualifying participants based on "point determinations." (ECF No. 38-1.)

Cashman began working for Bayland as its vice president of sales in 2007. Cashman's 2007 employment agreement required that Bayland pay him a base salary, plus commission based on the price of each sales contract, as well as other benefits, including health insurance and inclusion in the Plan. (ECF No. 38-3.) In 2013, Bayland divided the sales department into two sectors: commercial sales and agricultural sales. Cashman became Bayland's vice president of commercial sales and signed a new employment agreement in 2013 reflecting the position change. (ECF No. 38-4.) The agreement incorporated a new commission formula, under which Cashman received commission on the net profit of all commercial sales and agricultural projects. Bayland remained obligated to pay Cashman a base salary, provide benefits, and include Cashman in the Plan. (*Id.*)

Cashman's employment contract with Bayland was not for a set term. As a result, his employment was "at will"; Bayland was free to terminate Cashman's employment at any time as long as the termination was not contrary to a fundamental and well-defined public policy. *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 573, 335 N.W.2d 834 (1983). Bayland terminated Cashman's employment on March 26, 2015.

2

Cashman claims that he was terminated in bad faith after he raised concerns about certain company expenditures for the private benefit of one of its officers. He also claims that he was not paid commissions and other compensation he had earned before his termination. Though somewhat lacking in detail, his complaint asserts eleven "claims for relief." The first three seek relief under ERISA, and the remaining eight assert various claims under Wisconsin statutory and common law. *See* Compl. Counts 1–3 (ERISA), Count 4 (non-payment of wages under Wis. Stat. §§ 109.03 and 109.11), Counts 5–10 (breach of contract and alternative quasi-contractual claims), and Count 11 (breach of duty of good faith).

The ERISA claims are based on an alleged attempt by Farley to bill the cost of a garage he had built for his own home to a company account. In November or December 2014, Cashman discovered that Farley billed materials for a garage built at his home to a Bayland project referred to as the "Koehne Chevrolet project." (Pl.'s Proposed Findings of Fact (PPFOF) PPFOF ¶¶ 15, 17.) The Koehne Chevrolet project involved a contract Bayland had with Chade Koehne, the president of Koehne Buick-Pontiac-GMC, Inc., to construct a new automobile dealership in Marinette, Wisconsin. Cashman discussed Farley's conduct with Jeff Juse, the project's head estimator, in December 2014. (PPFOF ¶ 18.) Cashman contends that by billing expenses for his personal project to a company account, Farley decreased Bayland's profits and thereby negatively affected the Plan and its participants, including Cashman. Cashman claims Ambrosius, Farley, and Dan Verhagan, Bayland's chief financial officer, falsified Bayland records in billing the garage materials to the Koehne Chevrolet project and engaged in tax fraud. (PPFOF ¶¶ 30–34, 44.)

Farley admits that he did track expenses for his garage to the Koehne Chevrolet project, but claims that by combining the purchase of the materials for his garage with those needed for the

3

Koehn project, he saved money for both by getting a better price on a larger volume of materials. (Farley Dep. Tr. 35, ECF No. 53; Decl. of Abraham Farley ¶ 26, ECF No. 39.) The costs of material for his garage were not charged to or paid by Koehne, however, nor were they paid by Bayland, because Farley reimbursed Bayland for the materials by deducting $11,522.74 from his end-of-the-year bonus. (DPFOF ¶ 54.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. ERISA

ERISA is aimed at providing "'a panoply of remedial devices' for participants and beneficiaries of [employer-provided] benefit plans." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 (7th Cir. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108

4

(1989)). Cashman asserts two kinds of ERISA claims: a claim for benefits due pursuant to 29 U.S.C. § 1132(a)(1)(B) and claims of breach of fiduciary duty under 29 U.S.C. §§ 1109(a) and 1132(a)(3).

### 1. Claim for Benefits Due

Section 1132(a)(1)(B), which Cashman claims Defendants violated, states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (also known as ERISA § 502(a)(1)(B)). Defendants argue that Cashman's benefits claim fails for three reasons: (1) Cashman failed to name the Plan as the proper defendant, (2) Cashman does not identify a benefit to which he is or was entitled under the Plan that Defendants failed to provide him, and (3) Cashman failed to comply with the Plan's claim procedure. For the reasons below, I agree with Defendants that Cashman failed to name the plan as the proper defendant. I therefore decline to address Defendants' alternative arguments.

Defendants assert that they are improper defendants to Cashman's claim for benefits due because, under ERISA § 502(a)(1)(B), Cashman was required to pursue his claim against the Plan itself. (Mem. Supp. Defs.' Mot. Summ. J. at 15, ECF No. 35.) Indeed, this is the general rule established by the Seventh Circuit. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001) (An ERISA plaintiff may only recover benefits against the plan as an entity, not the employer.); *see also Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004) (A claim for benefits under § 502(a)(1)(B) "generally is limited to a suit against the Plan, not an employer."); *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1490

5

(7th Cir. 1996). However, the Seventh Circuit has recognized limited exceptions to this rule that allow a plaintiff to sue a non-plan party in a claim for ERISA benefits. *See Mein v. Carus Corp.*, 241 F.3d 581, 584–85 (7th Cir. 2001) (holding that the employer/plan administrator was the proper defendant in an ERISA benefits claim where employer and plan closely intertwined); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (refusing to find that the employer is the wrong party to an ERISA benefits action where plan documents refer to employer and plan interchangeably and employer designated itself as plan's agent for service of process). When the relationship between the plan, the plan administrator, and the plan sponsor is "indistinct or contested, the plaintiff's designation of the 'wrong' defendant can be forgiven provided the 'right' defendant is not misled." *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011).

Here, Defendants contend they are neither the plan nor the plan's administrators. As an initial matter, Cashman cannot assert a claim for benefits due against Ambrosius or Farley in their individual capacity. It is improper for "a plaintiff seeking benefits to substitute individual corporate members as defendants rather than the plan." *Garratt v. Knowles*, 245 F.3d 941, 949 n.7 (7th Cir. 2001); *see also Jass*, 88 F.3d at 1490. In short, Ambrosius and Farley are improper defendants for this claim.

Bayland is also an improper defendant. Although Bayland is the plan's sponsor, it is neither the plan nor the plan administrator. The terms of the Plan define the "administrator" as "[Bayland], which shall control and manage the operation and administration of the Plan as the named fiduciary." (ECF No. 38-1 at 2.) Bayland may nonetheless authorize an individual to act as the administrator on its behalf. (ECF Nos. 38-1 & 49-2.) Defendants contend that they do not manage, control or administer the Plan, (DPFOF ¶ 8), and Ambrosius' Declaration asserts that the "Plan is controlled,

6

managed and administered by representatives from a third-party entity, Principal Financial Group." (ECF No. 38 ¶ 8.) Cashman does not allege that the lines between the Plan, its administrator, and its sponsor are intertwined. Because Bayland is neither the plan nor its administrator, I find that Cashman failed to name the proper defendant. Accordingly, Defendants are entitled to summary judgment on Cashman's claim for benefits due.

### 2. Claim for Breach of Fiduciary Duty

Cashman also asserts that Defendants breached their fiduciary duty under the Plan. ERISA § 502(a)(2) permits a plan participant to bring a civil action for "appropriate relief" under 29 U.S.C. § 1109 (also known as ERISA § 409). ERISA § 409 requires in part that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." ERISA § 502(a)(3) allows a plan participant "to enjoin any act or practice which violate this subchapter or the terms of the plan" or to obtain other equitable relief to either redress such violations or enforce any provisions of the subchapter or the terms of the plan. Cashman argues that Farley's actions in billing personal materials to a client affected the Plan's share value and Bayland's profitability. Cashman claims Bayland's profitability ultimately impacted Bayland's contribution to the plan. (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 19–21, ECF No. 45.)

Defendants' response is, essentially, "no harm, no foul." Defendants assert that Cashman has not identified any harm or loss to the Plan caused by Defendants' conduct. Again, fiduciaries are only liable for losses to a plan that resulted from a breach. 29 U.S.C. § 1109. Absent a showing of either economic harm or a breach of the duty of loyalty, "it would be improper to impose liability

7

under ERISA." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997). In *Mira*, a participant in an employee health insurance benefit plan sued its administrators for breach of fiduciary duty. *Id.* at 468. Due to the company's financial struggles, the defendants used employee payroll deductions intended to pay insurance premiums to finance the company's day-to-day operations. *Id.* at 469. As a result, the employees' insurance coverage lapsed. *Id.* at 471. Although the court found that the defendants violated their duty of care in not timely informing employees of the lapse, the court held that the employee was not entitled to recover damages. *Id.* The court focused on the fact that the defendant's did not engage in self-dealing. *Id.* at 472. Because the defendants did not use the plan's assets for their own personal gain or benefit, the court precluded recovery. *Id.*

This case is further removed from the facts in *Mira* because Defendants did not deal with plan assets for their own benefit. In fact, Defendants did not use the Plan's assets at all. Indeed, invoicing personal projects to a client account may be bad business practice, but this conduct did not involve the Plan's assets. Moreover, Cashman does not indicate what type of harm he suffered or a benefit to which he is or was entitled that he was denied because of Defendants' actions. Though he contends Defendants' conduct affected the stocks' valuation and Bayland's profitability, these assertions are pure speculation. While Bayland's contribution to the Plan correlated to Bayland's profits, Bayland had sole discretion to determine the amount of contribution it would make to the plan. (ECF No. 38-1 at 4.) The Plan did not require Bayland to contribute every year. (ECF No. 38-1 at 3.) In the end, the Plan's participants, including Cashman, got exactly what they were promised under the terms of the Plan.

Instead, Cashman claims that because he did not receive commission on projects completed after his termination in 2015, he did not receive the benefits he was entitled to under the Plan. The Plan allocates Bayland's contributions to qualifying participants through a point system. (ECF No. 38-1 at 3–4.) A qualifying participant receives ten points for each year of service at Bayland as well as one point for each $1,000 of compensation, including commission, earned during the plan year. (ECF No. 38-1 at 4.) However, Cashman was not a qualified participant eligible to receive benefits under the Plan in 2015. The Plan requires all qualified participants to be employed on the last day of the plan year, December 31, and to work 1,000 hours in a plan year. (ECF Nos. 38-1, 57-2.) Cashman satisfies neither requirement—he was terminated March 26, 2015 and did not work 1,000 hours in that year. In sum, Cashman has not identified a benefit he was entitled to that Defendants denied him.

I find that Defendants did not breach their fiduciary duty under the Plan and that their conduct did not result in losses to the Plan. Because the Defendants did not violate the terms of the plan or any provision in ERISA, relief under ERISA § 502(a)(3) is not warranted. Therefore, Defendants are entitled to summary judgment as to Cashman's ERISA claims.

**B. State Law Claims**

Cashman has also alleged eight state law claims: (1) breach of contract; (2) implied contract; (3) promissory estoppel; (4) unjust enrichment; (5) quantum meruit; (6) a claim under the procuring cause doctrine; (7) breach of the covenant of good faith and fair dealing; and (8) non-payment of wages. Essentially, Cashman challenges the amount of commissions he is owed pursuant to his employment agreement. The general rule is that when federal claims drop out of a case, a federal court will decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3);

9

*see Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) (noting that the rule is dismissal unless state claims are frivolous or a "no brainer"). I cannot say that all of the state law claims Cashman has asserted are frivolous or "no brainers." Accordingly, I will follow the general rule and dismiss these claims without prejudice so that they may be pursued in a state forum.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** with respect to the federal claims, and such claims are **DISMISSED**. The remaining state law claims are dismissed without prejudice. The Clerk is directed to enter judgment in favor of the Defendants and against Cashman forthwith.

**SO ORDERED**  11th  day of October, 2016.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court